```
                                            RECEIPT # _____
                                            AMOUNT $ ____N/A___
        UNITED STATES DISTRICT COURT         SUMMONS ISSUED _N/A_
    FOR THE DISTRICT OF MASSACHUSETTS        LOCAL RULE 4.1 _____
                                             WAIVER FORM _____
                                             MCF ISSUED _____
                                             BY DPTY. CLK. __PM__
UNITED STATES OF AMERICA,      )             DATE __11/3/04_____
              Plaintiff,       )
                               )
         v.                    )   Civil Action No.
                               )
20 BERNADETTE STREET,          )
FITCHBURG, MASSACHUSETTS,      )
              Defendant.       )       04cv 12337 JLT
```

**MAGISTRATE JUDGE** Alexander

**COMPLAINT FOR FORFEITURE IN REM**

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to 21 U.S.C. § 881(s)(7), alleges that:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is appropriate pursuant to 28 U.S.C. § 1395.

2. The defendant property consists of the real property located at 20 Bernadette Street, Fitchburg, Massachusetts, including all buildings, appurtenances, and improvements thereon, as described in more detail and recorded in the Worcester County Registry of Deeds at Book 3797, Page 222 (the "Defendant Property"). The Defendant Property currently is owned by George W. Bureau.

3. The in rem Defendant Property is now and, during the pendency of this action, will be within the jurisdiction of this Court.

4.   As outlined in the Affidavit of Detective James M. Gilbert of the Fitchburg Police Department, and the Affidavit of United States Drug Enforcement Administration Special Agent James F. O'Hara II, attached as Exhibits A and B and incorporated herein by reference, the United States has probable cause to believe that the Defendant Property constitutes real property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846, and/or 856.

5.   By virtue of the facts alleged herein, the Defendant Property is subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(7).

WHEREFORE, the United States of America prays:

1.   That a Warrant and Monition, in the form submitted, issue to the United States Marshal for the District of Massachusetts, commanding him to give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2.   That judgment of forfeiture be decreed against the Defendant Property;

3.   That thereafter the Defendant Property be disposed of according to law; and

4.   For costs and all other relief to which the United States may be entitled.

Respectfully submitted,

MICHAEL J. SULLIVAN,
United States Attorney

By: _____
KRISTINA E. BARCLAY
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3100

Date:   November 3, 2004

## VERIFICATION

I, James F. O'Hara II, Special Agent with the Drug Enforcement Administration, state that I have read the foregoing Verified Complaint for Forfeiture <u>in Rem</u>, and the attached Affidavits, and the contents thereof are true to the best of my knowledge, information, and belief.

_____
James F. O'Hara II
Special Agent
United States Drug Enforcement
Administration

Dated: November 3, 2004

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                    Boston

Then personally appeared before me the above-named James F. O'Hara II, Special Agent, United States Drug Enforcement Administration, who acknowledged the foregoing to be true to the best of his knowledge, information, and belief, and to be his free act and deed on behalf of the United States of America.

Subscribed to and sworn to before me this ___3___ day of November, 2004.

Notary Public
My Commission Expires: 5/15/2009

KAY-BETH WHITTEN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 15, 2009

4

**EXHIBIT A**

**AFFIDAVIT OF JAMES M. GILBERT**

I, James M. Gilbert, state the following under oath:

1. I am a Police Officer for the City of Fitchburg, and have been so employed for 20 years. Since January 2001, I have been assigned to the Drug Suppression Unit. I have attended classes given by Hutchinson Law Enforcement Training LLC in narcotic and drug interdiction. I have also completed an 80 hour basic narcotic school conducted by the New England Field Division of the United States Drug Enforcement Administration. For over 10 years I have been the Department's K-9 officer which included the handling of a multi-certified K-9 narcotic odor detection dog. During the past several years, I have been involved in the investigation of violations of the Controlled Substance Act. I have participated in more than 75 investigations, including surveillance and the execution of search warrants, relating to the distribution and the sale of controlled substances.

2. As a result of my training and experience, I am familiar with the methods, routines, and practices of individuals involved in the sale and trafficking of narcotics. I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver and dispense heroin, cocaine, marijuana, and other controlled substances.

3. I submit this Affidavit in support of a Complaint for



Forfeiture In Rem against the real property and buildings located at 20 Bernadette Street, Fitchburg, Massachusetts (the "Defendant Property"). The Defendant Property currently is owned by George W. Bureau.

4. This affidavit is based on investigations conducted by the Fitchburg Police Department, North Worcester County Drug Task Force and Massachusetts State Police. These investigations included surveillance, controlled purchases of narcotics by confidential informants and the execution of search warrants. The factual statements made in this affidavit are based on my own participation in the November 2003 investigation and from information provided to me by other law enforcement officers. This affidavit does not contain every detail I and other law enforcement personnel have learned during the course of this investigation.

## **INVESTIGATION**

5. In February 2003 and early October 2003, I was in contact with a confidential informant ("the CI") who stated that cocaine was being sold by two individuals, "Billy" and "Bonnie", at the Red Star Café, located on Bemis Road in Fitchburg, Massachusetts. The CI has proven itself to be reliable in the past by supplying information which lead to multiple arrests, and the conviction of one individual for violations of the Controlled Substances Act. Based on the CI's descriptions of "Billy" and

2

"Bonnie", including physical descriptions and personal information, these individuals were later identified as George W. Bureau ("Bureau") and Bonnie L. Stetson ("Stetson"). The CI stated that Bureau and Stetson would patronize the Red Star Café on an almost nightly basis and would sell cocaine while inside the Café. The CI also described how Bureau would go to work every day, return to the Defendant Property, where he lived, in the middle of the afternoon, shower and change his clothes, and leave for the Red Star Café.

6. The CI stated that Bureau and Stetson kept the cocaine they sold in cigarette packs and would retrieve the packets of cocaine from the pack as they were requested. In addition, the CI stated that Bureau would leave the Red Star Café several times during the night to retrieve more cocaine which he kept in his vehicle parked outside of the Red Star Café.

7. The CI agreed to conduct four controlled buys with either Bureau or Stetson.

**First Controlled Buy**

8. In October, 2003, the CI met an officer at a predetermined location. The officer showed the CI a photograph of Bureau and confirmed that the man in the photograph was the individual it knew as "Billy." The officer searched the CI and found nothing on its person. The CI was then given between $20 and $150 in official advanced funds ("OAF") to make a controlled

3

buy with either Bureau or Stetson. At the time, law enforcement officers observed a Blue Chevy K10 truck bearing Massachusetts Registration #6443 WI, registered to Bureau (the "Chevy Truck"), parked directly in front of the Red Star Café. I and other law enforcement officers observed the CI enter the Café through the front door. A short time later, I and other officers observed the CI leave the Café from the same door and proceed to a predetermined location, where an officer met the CI. The CI produced an amount of white powder which it stated it had purchased from "Billy" inside the Café. The CI stated that "Billy" produced the white powder substance from a green and white cigarette pack in his possession. The white substance field tested positive for cocaine. The CI was under surveillance at all times before it entered the Café and all times after it exited the Café.

**Second Controlled Buy**

9.  In November 2003, Detective Richard Fitzpatrick of the Fitchburg Police Department initiated surveillance outside of the Defendant Property. Surveillance confirmed the CI's information about Bureau's daily routine: Detective Fitzpatrick observed Bureau arrive at the Defendant Property in the Chevy Truck in the middle of the afternoon. Detective Fitzpatrick saw Bureau get out of the Chevy Truck, at which point Detective Fitzpatrick lost surveillance of Bureau, due to his vantage point. A short time

4

later, Detective Fitzpatrick saw Bureau get back in the Chevy Truck and leave the area. Detective Fitzpatrick followed Bureau as Bureau left the Defendant Property and drove directly to the Red Star Café, where I had established surveillance. When Bureau got out of the Chevy Truck at the Red Star Café, I saw Bureau carrying two cigarette packs, one pack red and white in color and the other pack green and white in color, and a cellular telephone. I watched as Bureau walked from the Chevy Truck into the Café.

10. Shortly thereafter, an officer met with the CI at a predetermined location. An officer searched the CI and found nothing on its person. The CI was then given between $20 and $150 in OAF to make a controlled buy from either Bureau or Stetson. Law enforcement officers observed the CI enter the Café through the front door. A short time later, the CI was observed leaving the Café from the same door. The CI proceeded to a predetermined location, where the CI was met by a law enforcement officer. The CI produced an amount of white powder which it stated it had purchased from "Billy" inside the Café. Law enforcement officers had not told the CI that Bureau had been observed carrying cigarette packs into the Red Star Café, when the CI stated that "Billy" produced the white powder substance from a red and white cigarette pack that he had in his possession. The white powder substance field tested positive for

cocaine. The CI was under surveillance during the time of the controlled purchase, except when the CI was inside of the Red Star Café.

**Third Controlled Buy**

11. Later in November 2003, Detective Fitzpatrick again initiated surveillance outside of the Defendant Property in the late afternoon. During surveillance, Detective Fitzpatrick observed Stetson arrive at the Defendant Property in a grey GMC Jimmy truck bearing Massachusetts Registration Number 10XE04 and registered to Bureau (the "GMC Jimmy"). Detective Fitzpatrick saw Stetson get out of the GMC Jimmy and walk towards the front door of the Defendant Property, at which point Detective Fitzpatrick lost surveillance of Stetson, due to his vantage point. A short time later, Detective Fitzpatrick saw Stetson get back into the GMC Jimmy and leave the Defendant Property. At the time Detective Fitzpatrick was conducting surveillance at the Defendant Property, I was surveilling the Red Star Café. When Stetson left the Defendant Property, Detective Fitzpatrick contacted me. Within ten minutes of being told by Detective Fitzpatrick that Stetson had left the Defendant Property, I observed Stetson drive by the Café in the GMC Jimmy and continue down the road. Approximately ten minutes later, officers observed the Chevy Truck turn onto Dover Street, which is adjacent to the Red Star Café. Stetson got out of the Chevy

6

Truck and entered the Café.

12. By the time Stetson arrived at the Red Star Café, an officer had already met with the CI at a predetermined location, searched the CI and found nothing on its person. The CI was then given between $20 and $150 in OAF to make a controlled buy from either Bureau or Stetson. Law enforcement officers observed the CI enter the Café through the front door before Stetson arrived at the Café. A short time after Stetson was seen entering the Café, officers saw the CI leave the Café from the same door. The CI proceeded to a predetermined location and was met by an officer. The CI produced an amount of white powder which it stated it had purchased from "Bonnie" inside the Café. The CI stated that "Bonnie" produced the white powder substance from a cigarette pack in her possession. The CI was shown a photograph of Stetson and it confirmed that the person in the photograph was the person whom it knew as "Bonnie". The white powder substance field tested positive for cocaine. The CI was under surveillance during the time of the controlled purchase, except when the CI was inside of the Red Star Café.

**Fourth Controlled Buy**

13. Between November 16 and 20, 2003, Detectives James Connolly and John Maki of the Fitchburg Police Department initiated surveillance outside of the Defendant Property in the middle of the afternoon. During surveillance, the Detectives saw

Bureau drive into the driveway of the Defendant Property in his Chevy Truck and enter the house. The Detectives also saw Stetson exit and enter the Defendant Property a number of times during the time Bureau was in the house. A short time later, the Detectives saw Bureau leave the house, get into the GMC Jimmy and leave the Defendant Property. Detectives Connolly and Maki followed Bureau to the Red Star Café, where they saw Bureau enter the café through the front door.

    14. Shortly thereafter, an officer met with the CI at a predetermined location. An officer searched the CI and found nothing on its person. The CI was then given between $20 and $150 in OAF to make a controlled buy from either Bureau or Stetson. Law enforcement officers observed the CI enter the Café through the front door. A short time later, officers saw the CI leave the Café through the same door. The CI proceeded to a predetermined location, where the CI was met by a law enforcement officer. The CI produced an amount of white powder which it stated it had purchased from "Billy" inside the Café. The CI stated that "Billy" produced the white powder from a cigarette pack that he had in his possession. The white powder substance field tested positive for cocaine. The CI was under surveillance during the time of the controlled purchase, except when the CI was inside of the Red Star Café.

8

**Execution of Search Warrant at the Defendant Property**

15. Based in part on the information set forth above, I applied for and was granted search warrants for Bureau, Stetson, the Defendant Property, the Chevy Truck and the GMC Jimmy on November 20, 2003.

16. Before 10:00 p.m. on November 20, 2003, officers established surveillance of the Red Star Café, where the GMC Jimmy and Chevy Truck were parked. Officers observed Bureau exit the Red Star Café, meet with individuals consistent with hand to hand drug deals, and then go back into the Café. At 9:57 p.m., members of the Fitchburg Police Department, the North Worcester County Drug Task Force and Massachusetts State Police Gang Unit arrived at the Red Star Café to execute the search warrants for Bureau, Stetson, and the vehicles.

17. Officers executing the search warrant on Bureau seized the following, among other items:

    a. Two Marlboro cigarette packages containing a total of 53 bundles of white powder, which were later analyzed and certified to contain 39.49 grams of cocaine;

    b. 92 white tablets in a plastic vial, later analyzed and certified to contain Oxycodone; and

    c. $2,411 in United States currency.

Bureau was arrested after the execution of the search warrant for

his person.

    18.  Officers executing the search warrant on Stetson seized the following items from Stetson's pocketbook:

    a.  One Marlboro cigarette package containing eight bundles of white powder, which were later analyzed and certified to contain .74 grams of cocaine; and

    b.  $14 in United States currency.

Stetson was arrested after the execution of the search warrant for her person.

    19.  Officers executed the search warrant at the Defendant Property at approximately the same time as the searches of Bureau and Stetson on November 20, 2003. Officers executing the search warrant at the Defendant Property seized the following, among other items:

    a.  One digital scale with white powder residue, later analyzed and certified to contain cocaine;

    b.  One plastic bag with white powder residue, later analyzed and certified to contain cocaine;

    c.  $1,750 in United States currency;

    d.  173 tablets, later analyzed and certified to contain Oxycodone;

    e.  5 tablets, later analyzed and certified to contain Oxycodone;

    f.  2 blue tablets, later analyzed and certified to contain Oxycodone;

    g.    One plastic bag containing white powder, later analyzed and certified to contain .80 grams of cocaine;

    h.    1 paper bindle, later analyzed and certified to contain .31 grams of cocaine;

    i.    One plastic bag containing white chunks, later analyzed and certified to contain 181.82 grams of cocaine;

    j.    One plastic bag containing white powder, later analyzed and certified to contain 3.13 grams of cocaine; and

    k.    One plastic bag of vegetable matter, later analyzed and certified to contain marijuana.

20. During execution of the search warrant, officers observed and photographed cartons of both red and white, and green and white, packages of Marlboro cigarettes at the Defendant Property.

21. During the execution of the search warrant at the Defendant Property, Stetson's thirteen and fourteen year old daughters confirmed that they and Stetson were living at the Defendant Property with Bureau.

22. On June 16, 2004, a Worcester County grand jury handed down thirteen indictments against Bureau. The indictments charged Bureau with violations of the Massachusetts Controlled Substances Act, including: possession of class E, D and B

11

substances, including cocaine, in a school zone; manufacture, distribution, or possession with the intent to manufacture, distribute, dispense, or bring into the Commonwealth twenty-eight to one hundred grams of cocaine; possession with the intent to distribute class C, B and E controlled substances, including marijuana and cocaine.

22. On June 16, 2004, a Worcester County grand jury handed down eleven indictments against Stetson. The indictments charged Stetson with violations of the Massachusetts Controlled Substances Act, including: possession of class E, C and B substances, including cocaine, in a school zone; manufacture, distribution, or possession with the intent to manufacture, distribute, dispense, or bring into the Commonwealth twenty-eight to one hundred grams of cocaine; possession with the intent to distribute class B and E controlled substances, including marijuana.

Signed under penalties of perjury this __ day of October 2004.

James M. Gilbert
Detective
Fitchburg Police Department
Drug Suppression Unit

12

**EXHIBIT B**

**AFFIDAVIT OF JAMES F. O'HARA II**

I, James F. O'Hara II, state the following under oath:

1. I am a Special Agent of the United States United States Drug Enforcement Administration (the "DEA"). I joined the DEA in 1984, when I was assigned to the New York City Office. I was transferred to the New England Field Division in 1989. For the past three years, I have been assigned to the Asset Forfeiture Section of the DEA. I have participated in approximately 50 investigations relating to the distribution and the sale of controlled substances such as cocaine, heroin, and marijuana, and am familiar with the methods, routines, and practices of narcotics traffickers. I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver, and dispense heroin, cocaine, marijuana, and other controlled substances.

2. I submit this Affidavit in support of a Complaint for Forfeiture In Rem against the real property located 20 Bernadette Street, Fitchburg, Massachusetts, including all buildings, appurtenances, and improvements thereon, which currently is owned by George W. Bureau ("Bureau").

3. This affidavit is based on investigations conducted by members of the Fitchburg Police Department in October and

1

GOVERNMENT EXHIBIT B

November 2003. During that investigation, a number of controlled purchases were made from Bureau and Bonnie L. Stetson ("Stetson"), who was a resident of the Defendant Property. These controlled purchases took place at the Red Star Café in Fitchburg, Massachusetts. Before two of the controlled purchases, surveillance officers observed Bureau and/or Stetson leave the Defendant Property and drive directly to the Red Star Café. This investigation also included the execution of a search warrant at the Defendant Property, the seizure of cocaine, Oxycodone, marijuana, cash, a digital scale and narcotics packaging materials, and the arrests of the owner (Bureau) and a resident (Stetson) of the Defendant Property.

4. Based on the information detailed in the Affidavit of Detective James T. Griffin of the Fitchburg Police Department, attached to the Complaint as Exhibit A, which I have reviewed, I have probable cause to believe that the Defendant Property was used or intended to be used to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846 and/or 856. I therefore have probable cause to believe that the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

Signed under the pains and penalties of perjury this 3rd day of November 2004.

_____
James F. O'Hara II, Special Agent
United States Drug
Enforcement Administration